IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CRADLE OF LIBERTY COUNCIL, INC.,           :
BOY SCOUTS OF AMERICA                      :
22nd & Winter Streets                      :
Philadelphia, Pennsylvania 19103           :
                    Plaintiff,             :      Civil Action No.
                                           :
             v.                            :      **JURY TRIAL DEMANDED**
                                           :
CITY OF PHILADELPHIA                       :
1515 Arch Street                           :
Philadelphia, Pennsylvania, 19102          :
                    Defendant.             :

## COMPLAINT

Plaintiff, Cradle of Liberty Council, Inc., Boy Scouts of America ("Cradle of Liberty"),

by and through its attorneys, Drinker Biddle & Reath LLP, brings this action against the City of

Philadelphia ("City"), and in support thereof, avers as follows:

1.       This is an action by Cradle of Liberty to enforce its rights under the laws and the

Constitution of the United States and the laws and the Constitution of the Commonwealth of

Pennsylvania.

2.       The Supreme Court of the United States has held that the First Amendment right

of expressive association protects the membership and leadership standards of the Boy Scouts of

America ("Boy Scouts") and its local councils from governmental interference.

3.       Because of its opposition to Cradle of Liberty's constitutionally protected

expression, the City decided to punish Cradle of Liberty, in violation of the First Amendment.

The City demanded that Cradle of Liberty repudiate its membership policy.  When Cradle of

Liberty refused to do so, the City took punitive action, demanding that Cradle of Liberty vacate

its headquarters located at N. 22nd Street and Winter Street that Cradle of Liberty constructed at

its own expense and has occupied for eighty years. In taking this action, the City is attempting to do indirectly what the Supreme Court of the United States has said it may not do directly.

4.    The City's attempt to evict Cradle of Liberty from its headquarters is a violation of Cradle of Liberty's constitutional rights. In particular, the City has imposed an unconstitutional condition upon Cradle of Liberty's receipt of a benefit that Cradle of Liberty has enjoyed for nearly eight decades, and that many other organizations that limit membership or services to members of a particular group continue to enjoy without punishment or the threat of punishment. In addition, by singling out Cradle of Liberty for disfavored treatment, the City's actions constitute viewpoint discrimination, which, in the words of former U.S. Supreme Court Justice William Brennan, is "censorship in its purest form."

5.    The City's conduct also violates both the laws and the Constitution of the Commonwealth of Pennsylvania.

6.    Cradle of Liberty has attempted to resolve this dispute amicably in order to avoid disruption to its programs and to avoid jeopardizing the services it provides to more than 70,000 children in Philadelphia and two suburban counties. Approximately 50,000 of those children live in Philadelphia. Unfortunately, the City has refused to negotiate toward a reasonable resolution, necessitating this action.

## PARTIES

7.    Plaintiff Cradle of Liberty is one of more than 300 local councils chartered by Boy Scouts of America to administer Boy Scouts' programs. Cradle of Liberty is an incorporated organization that administers Boy Scouts' programs in Delaware, Montgomery, and Philadelphia counties in southeastern Pennsylvania. (Cradle of Liberty is the product of a 1996

- 2 -

consolidation between the former Philadelphia and Valley Forge Councils of the Boy Scouts of America).

8.      Defendant City of Philadelphia is an incorporated municipality organized by and through the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims for relief arise under the Constitution and laws of the United States, 42 U.S.C. § 1983, and Plaintiff seeks declaratory relief authorized by 28 U.S.C. §§ 2201 and 2202.

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events and conduct complained of occurred or will occur in Philadelphia County.

## BACKGROUND

### A.    Boy Scouts' Values and Membership Policy

12.    Cradle of Liberty administers the programs of Boy Scouts of America in

Delaware, Montgomery, and Philadelphia Counties.  Boy Scouts of America is a private, non-

profit organization that was founded in 1910.  Its mission is to instill the values of the Scout Oath

and Law in youth members.  The Mission Statement of Boy Scouts states:

> The mission of the Boy Scouts of America is to prepare
> young people to make ethical and moral choices over their
> lifetimes by instilling in them the values of the Scout Oath
> and Law.

### Scout Oath

> On my honor I will do my best
> To do my duty to God and my country and
> to obey the Scout Law;
> To help other people at all times;
> To keep myself physically strong,
> mentally awake, and morally straight.

### Scout Law

A Scout is . . .

| Trustworthy | Obedient |
|---|---|
| Loyal | Cheerful |
| Helpful | Thrifty |
| Friendly | Brave |
| Courteous | Clean |
| Kind | Reverent |

13.    In the Boy Scouting program, the values of the Scout Oath and Law are taught

and modeled to the 15 to 30 boys in a Scout Troop by registered adult members of Boy Scouts of

America, including uniformed volunteer leaders such as a Scoutmaster and Assistant

Scoutmasters.  A relatively small number of professional leaders commissioned by Boy Scouts

of America and employed by local councils support the efforts of the adult volunteer in

delivering Scouting to the boys.  Because of their role in conveying the values of Boy Scouting, all registered adult volunteers and all commissioned professional leaders must commit themselves to live the values of the Scout Oath and Law.

**B.     Cradle of Liberty's Headquarters**

14.     Cradle of Liberty and its predecessor, the Philadelphia Council of the Boy Scouts of America ("Philadelphia Council") have a long-standing and mostly amicable relationship with the City.

15.     In 1928, Philadelphia Mayor Harry A. Mackey signed an ordinance providing the Philadelphia Council with the use of a City-owned plot of land to erect, at the Philadelphia Council's own expense, a building for its activities.  The ordinance also provided that the building would immediately become the property of the City but remain for the exclusive use of the Philadelphia Council for its activities.

16.     The following year, the Philadelphia Council — with the work of renowned Philadelphia architect Charles Z. Lauder — completed the construction of a Beaux Arts building at the corner of N. 22nd Street and Winter Street on the northern edge of Philadelphia's Center City neighborhood.  The building, now known as the Bruce S. Marks Scout Resource Center, was the first Boy Scouts headquarters in the country to be constructed by a local council and has served continuously as the headquarters for the Philadelphia Council and Cradle of Liberty (together, the "Council").

17.     Since 1929, the Council has paid all costs associated with its headquarters including, for example, maintenance, repairs and capital improvements with, upon information and belief, no financial contribution from the City.

18.    In 1994, the Philadelphia Council invested more than $1.5 million of its own funds to renovate the headquarters. At least for the last several years, Cradle of Liberty has spent approximately $60,000 annually for maintenance and upkeep of its headquarters.

**C.    City's Practice of Allowing Public Use of City-Owned Property**

19.    The Council has occupied its headquarters for much of its existence without the City questioning the membership policy regarding Scout leaders. As discussed below, the City has recently threatened to evict Cradle of Liberty and has taken steps to terminate Cradle of Liberty's use of its headquarters, alleging that Cradle of Liberty's adherence to Boy Scouts' constitutionally protected membership policies violates the City's Fair Practices Ordinance. There has been no complaint filed with any court or agency against Cradle of Liberty alleging a violation of the Fair Practices Ordinance.

20.    The City currently allows or has allowed numerous individuals and organizations to use property owned, controlled, or managed by the City. Upon information and belief, several organizations that have arrangements with the City have practices or policies that require the exclusion of classes of individuals designated as protected by the City's Fair Practices Ordinance.

21.    Upon information and belief, the City has approximately 100 leases for which the lessee pays under $2000 per year, including approximately 15 to other youth organizations. Several of the leases involve organizations that limit membership or services to particular groups. For example,

- The Roman Catholic Church of the Maternity of the Blessed Virgin Mary has paid nominal rent for a church in Pennypacker Park since 1935.

- Zion Baptist Church pays $25 per year to lease property for the Clara Baldwin Home for seniors.

- 6 -

- Women for Greater Philadelphia and Colonial Dames of America have free perpetual leases for buildings.

Each of these organizations is allowed to maintain its own internal membership standards and viewpoints without threats of increased rent or eviction.

22.    Upon information and belief, with the exception of Cradle of Liberty, the City has never terminated the use of space by any organization with a policy or practice that requires the exclusion of classes of individuals designated as protected by the City's Fair Practices Ordinance.  Moreover, upon information and belief, the City has no plans to terminate the use of space by any organization with a policy or practice that requires the exclusion of classes of individuals designated as protected by the City's Fair Practice Ordinance.

**D.    Antecedents of the Current Dispute**

**i.    Boy Scouts' Constitutionally Protected Membership Policies**

23.    The Supreme Court of the United States ruled in the 2000 case of *Boy Scouts of America v. Dale* that Boy Scouts and its local councils, as private organizations, have a First Amendment right of expressive association that permits them to set their membership policies without governmental interference.

24.    Cradle of Liberty agreed to adhere to Boy Scouts' membership policies when it received a charter to administer Boy Scouts' programs.

**ii.    Cradle of Liberty and the City Have a Dispute and Reach a Resolution**

25.    In June 2003, Philadelphia Mayor John F. Street requested that the City Law Department, then headed by City Solicitor Nelson Diaz, examine the arrangement between the City and Cradle of Liberty regarding Cradle of Liberty's use of its headquarters.  In September 2003, Mr. N. Diaz responded to Mayor Street via confidential letter, informing the Mayor that

the Law Department had concluded that Boy Scouts' membership policies violated the City's

1982 Fair Practices Ordinance. Mr. N. Diaz further concluded that the City should not allow

Cradle of Liberty to remain in its headquarters if Cradle of Liberty continued to adhere to the

Boy Scouts' membership policy.

26.    In an effort to reach an amicable resolution of the dispute, a series of meetings

involving differing combinations of representatives of the Mayor's office, the City Law

Department, certain activists, Cradle of Liberty, and others occurred between September 2003

and January 23, 2004.

27.    Throughout the four months, the City and Cradle of Liberty exchanged several

draft non-discrimination statements attempting to address all of the City's concerns. The City

and Cradle of Liberty understood that the purpose of the negotiations was for Cradle of Liberty

to take action to allay the City's concerns in exchange for the City's forbearing with its efforts to

evict Cradle of Liberty from its headquarters.

28.    Finally, at a meeting on January 23, 2004, Cradle of Liberty, at the request of the

City, adopted its "Non Discrimination Statement of Cradle of Liberty Council Boy Scouts of

America" ("Non Discrimination Statement"). The Non Discrimination Statement provides:

> Cradle of Liberty Council, Boy Scouts of America, operates to
> help children and their families in Delaware, Montgomery, and
> Philadelphia counties in southeastern Pennsylvania. As the most
> diverse youth serving organization in our service area, we are
> committed to this mission and we oppose any form of unlawful
> discrimination. All of our members repeatedly pledge to respect
> all people and defend the rights of others. Prejudice, intolerance,
> and unlawful discrimination in any form are unacceptable within
> the ranks of Cradle of Liberty Council.

29.    The City agreed that upon adoption of the above Non Discrimination Statement, it

would forbear from any effort to evict Cradle of Liberty from its headquarters.

- 8 -

30.    The City and Cradle of Liberty understood that the term "unlawful discrimination" was an attempt to strike a balance between the right of expressive association recognized by the Supreme Court in *Dale* and the competing objectives of the City and certain activists. This language was used because this language was satisfactory to the City. Moreover, it would satisfy the activists who had prompted the Mayor's Office to examine an arrangement that had existed for nearly eighty years, including more than twenty years since the adoption of the City's Fair Practices Ordinance.

31.    The City also demanded that Cradle of Liberty adopt a procedure to allow for the application of due process protocols in the event the membership of a Scout leader were to be revoked under the Boy Scouts' membership policy. Cradle of Liberty agreed to that, too.

32.    Cradle of Liberty's adoption of the Non Discrimination Statement resolved the dispute regarding Cradle of Liberty's continued use of its headquarters. The City accepted Cradle of Liberty's adoption of the Non Discrimination Statement and ceased its efforts to evict Cradle of Liberty.

33.    The Non Discrimination Statement has remained in effect continuously since January 23, 2004.

34.    Neither the City nor anyone else has alleged that Cradle of Liberty has ever violated the Non Discrimination Statement, or that Cradle of Liberty has in any way violated the agreement reached in January 2004. Nor has anybody asked Cradle of Liberty to apply the due process protocols.

### iii.    City Again Moves to Evict Cradle of Liberty

35.    In 2005, Romulo Diaz, Jr., who had replaced Nelson Diaz as City Solicitor, wrote to Cradle of Liberty's Executive Director, William T. Dwyer, III, demanding that Cradle of

Liberty "clarify" the meaning of the term "unlawful discrimination" as used in the Non Discrimination Statement. Mr. R. Diaz asked whether Cradle of Liberty's opposition to "unlawful discrimination" included opposition to discrimination that the City has asserted is unlawful under the City's Fair Practices Ordinance — namely, discrimination based on sexual orientation.

36.    Eighteen more months elapsed before Cradle of Liberty heard from the City again. By letter dated Thursday, July 20, 2006,[1] without prior notice, Mr. R. Diaz wrote: "The avowed national policy of the Boy Scouts of America is to discriminate in membership and scout leadership positions against openly gay youth and adults. The City Law Department has concluded that such discrimination is illegal under the Home Rule Charter and the Philadelphia Code." The letter declared that Cradle of Liberty had to abandon its constitutionally protected membership policy in order to remain in its headquarters unless it agreed to pay the City "fair market rent," which the City later decided meant $200,000 per year — more than double the rent per square foot paid for the highest price office space in Philadelphia. The letter further stated that if Cradle of Liberty refused to meet either of these demands, the City would evict the council from its headquarters. Upon information and belief, no other organization with a similar arrangement with the City has ever been presented with this choice. Cradle of Liberty alone was singled out for disfavored treatment. Both the proposed eviction and the "fair market rent" requirement is intended to punish Cradle of Liberty for its constitutionally protected membership policy.

37.    The following Monday, July 24, 2006, which was the next business day after Cradle of Liberty received Mr. R. Diaz's letter, the Fairmount Park Commission ("Park

Commission") held a meeting at which it voted to terminate Cradle of Liberty's use of the headquarters. Although the meeting and vote were of significant importance to Cradle of Liberty, Cradle of Liberty never received prior notice of the meeting or vote. Moreover, the vote was not even on the Park Commission's published agenda for that meeting. Consequently, Cradle of Liberty did not have an opportunity to present its side.[2]

38.    Following the Park Commission's vote, the City and Cradle of Liberty conducted further discussions to resolve the dispute. Those discussions were ongoing when Cradle of Liberty was blindsided again.

39.    On May 31, 2007, City Councilman Darrell Clarke of the Philadelphia City Council, without notice to Cradle of Liberty, and, upon information and belief, without notice to the other members of City Council, introduced a resolution in City Council approving the eviction of Cradle of Liberty from its headquarters. City Council passed the resolution without debate. The City set a deadline for Cradle of Liberty to vacate its headquarters by May 31, 2008.

**COUNT I**
United States Constitution
First Amendment
42 U.S.C. § 1983

40.    Plaintiff hereby incorporates each of the allegations above as if set forth herein at length.

**Unconstitutional Conditions**

41.    Defendant owns, controls, or manages a substantial number of properties in the City of Philadelphia. By long-standing policy and practice, Defendant has allowed the use of

---

[1]    Although dated Thursday, July 20, the letter was not delivered to Cradle of Liberty until the close of business on Friday, July 21, 2006.

- 11 -

scores of properties to a variety of individuals, community groups, and even for-profit entities for numerous social, recreational, civic, charitable, religious, and operational purposes. Defendant has allowed many groups to use properties without paying rent or for below market or nominal rents.

42.    Cradle of Liberty has a First Amendment right of expressive association to determine who may serve as a Scout leader.

43.    Defendant has informed Cradle of Liberty that if it chooses to adhere to its constitutionally protected membership policy for Scout leaders, it must either leave its headquarters or pay "fair market rent" as determined by the City. In fact, the so-called "fair market rent" is exorbitant and meant to punish Cradle of Liberty for adhering to the Boy Scouts' constitutionally protected membership policy. The City has also informed Cradle of Liberty that the only way it can remain under the long-standing arrangement is if Cradle of Liberty abandons its constitutionally protected membership policy.

44.    Defendant's efforts to condition Cradle of Liberty's continued use of its headquarters on Cradle of Liberty's agreement to abandon its constitutionally protected membership policy or to pay a punitive rental increase violates the First Amendment doctrine of unconstitutional conditions.

45.    In violation of 42 U.S.C. § 1983, Defendant has acted under color of state law to deprive Plaintiff of its rights under the First Amendment of the United States Constitution.

---

[2]    Notably, several activists supporting the eviction of Cradle of Liberty were notified of the meeting and the vote, attended the meeting and had an opportunity to voice their views to the Park Commission about Cradle of Liberty's use of its headquarters.

## Viewpoint Discrimination

46.     Defendant owns, controls, or manages a substantial number of properties in the
City of Philadelphia. By long-standing policy and practice, Defendant has created a government
forum by leasing or otherwise allowing the use of scores of properties to a variety of individuals,
community groups, and even for-profit entities for numerous social, recreational, civic,
charitable, religious, and operational purposes.

47.     According to well-established First Amendment principles, when a government or
governmental entity expends funds or resources, or opens its facilities to private groups,
decisions regarding allocation of those funds or resources or the availability of governmental
facilities must be made in a manner that is viewpoint neutral.

48.     Cradle of Liberty holds a viewpoint regarding the membership policy it applies
when determining whether to permit an individual to serve as a Scout leader. The United States
Supreme Court has held that a Scout council has a First Amendment right to adhere to this
viewpoint when setting its membership.

49.     Defendant has threatened and has taken steps to evict Cradle of Liberty based
solely on Cradle of Liberty's adherence to its constitutionally protected viewpoint as manifested
in its membership policy. Defendant's conduct constitutes viewpoint discrimination.

50.     In violation of 42 U.S.C. § 1983, Defendant has acted under color of state law to
deprive Plaintiff of its rights under the First Amendment of the United States Constitution,
including its rights to freedom of speech, freedom of association, and expressive association.

**COUNT II**
United States Constitution
Fourteenth Amendment/Equal Protection
42 U.S.C. § 1983

51.     Plaintiff hereby incorporates each of the allegations above as if set forth herein at length.

52.     Defendant owns, controls, or manages a substantial number of properties in the City of Philadelphia.  By long-standing policy and practice, Defendant has allowed the use of scores of properties by a variety of individuals, community groups, and even for-profit entities for numerous social, recreational, civic, charitable, religious, and operational purposes. Defendant has allowed many groups to use properties without paying rent or for below market or nominal rents.

53.     The Equal Protection Clause requires the government to treat all similarly situated groups alike.  More specifically, the Equal Protection Clause prohibits the government from engaging in the selective treatment of groups based on the intent to inhibit or punish the group's exercise of constitutional rights.

54.     Plaintiff holds a constitutionally protected viewpoint that a Scout leader must agree to live according to the Scout Oath and Law.  The United States Supreme Court has held that a Scout council has a First Amendment right to adhere to this viewpoint when setting its membership.

55.     Defendant contends that Cradle of Liberty's constitutionally protected membership policy violates the City's 1982 Fair Practices Ordinance.  Because of Cradle of Liberty's membership policy, Defendant has threatened to evict Cradle of Liberty from its headquarters unless it abandons its constitutionally protected membership policy or pay a drastically increased rent for use of the headquarters.

- 14 -

56.     Upon information and belief, Defendant allows several other groups to use City property under terms similar to those applying to Cradle of Liberty, and these groups exclude from their membership classes of individuals purportedly protected by the Fair Practices Ordinance. Upon information and belief, Defendant has never tried to force any of these groups to change their membership policies or a pay a punitive rental rate.

57.     In violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, Defendant has singled out Cradle of Liberty for selective treatment because Defendant wants to inhibit or punish Cradle of Liberty's exercise of its constitutional rights.

## COUNT III
Pennsylvania Constitution
Article I, § 7

58.     Plaintiff hereby incorporates each of the allegations above as if set forth herein at length.

59.     Article I, § 7 of the Pennsylvania Constitution provides in relevant part: "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty."

60.     For the same reasons discussed in paragraphs 40 through 50 above, the City's conduct violates the free speech provisions of the Pennsylvania Constitution.

## COUNT IV
Pennsylvania Constitution
Equal Protection
Article I, §§ 1, 26

61.     Plaintiff hereby incorporates each of the allegations above as if set forth herein at length.

62.     Article I, § 1 of the Pennsylvania Constitution provides: "Inherent rights of mankind: All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

63.     Article I, § 26 of the Pennsylvania Constitution provides: "No discrimination by Commonwealth and its political subdivisions: Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."

64.     For the same reasons discussed in paragraphs 51 through 57 above, the City's conduct violates the equal protection provisions of the Pennsylvania Constitution.

### COUNT V
Breach of Contract
Declaratory Judgment

65.     Plaintiff hereby incorporates each of the allegations above as if set forth herein at length.

66.     Throughout their negotiations in late 2003 and early 2004, Cradle of Liberty and the City understood that the purpose of the negotiations was for Cradle of Liberty to take action to allay the City's concerns about Cradle of Liberty's adherence to the Boy Scouts' policy in exchange for the City's desisting with its efforts to evict Cradle of Liberty from its headquarters.

67.     To resolve the dispute, the City offered Cradle of Liberty the Non Discrimination Statement. Both the City and Cradle of Liberty understood that the adoption of the Non Discrimination Statement would resolve the dispute regarding Cradle of Liberty's continued use

of its headquarters, and that the City would no longer try to evict Cradle of Liberty based on its adherence to Boy Scouts' policy.

68.     Cradle of Liberty accepted and adopted the Non Discrimination Statement.

69.     Cradle of Liberty's acceptance of the Non Discrimination Statement following the City's offer established a contract between the City and Cradle of Liberty.  Under this contract, Cradle of Liberty was required to issue and adhere to the Non Discrimination Statement, and the City was required to forbear from efforts to evict Cradle of Liberty based on its constitutionally protected membership policy.

70.     Cradle of Liberty has followed the Non Discrimination Statement at all times since its adoption.  The City has never asserted otherwise.

71.     The City has threatened eviction and has taken steps to evict Cradle of Liberty. These actions constitute a breach of the agreement reached on January 24, 2004.

72.     Cradle of Liberty is entitled to a declaration that the City has breached the terms of the January 24, 2004 agreement and is entitled to all remedies flowing from such a breach, including damages and a permanent injunction.

### COUNT VI
Unjust Enrichment

73.     Plaintiff hereby incorporates each of the allegations above as if set forth herein at length.

74.     If it is determined that the City's eviction of Cradle of Liberty is not unlawful, and that the City may take possession of Cradle of Liberty's headquarters, the City should be required to provide just compensation.

75.     Cradle of Liberty's predecessor council, Philadelphia Council, erected the headquarters at N. 22nd Street and Winter Street with funds donated for the benefit of the Scouts.

The Council has maintained the premises at substantial cost for nearly eighty years, including a major renovation in 1994 that cost more than $1.5 million and, at least for the last several years, $60,000 in annual maintenance fees. Upon information and belief, the City does not require other individuals or groups with an arrangement similar to Cradle of Liberty's to pay for renovations or maintenance.

76.     If the City is permitted to take possession of the premises, the City will unjustly receive and appreciate the benefit of a property substantially improved as compared to the plot granted the Philadelphia Council in 1928.

77.     Under these circumstances, it would be unjust for the City to retain such benefits without making payment to Cradle of Liberty for the reasonable value of the benefit Cradle of Liberty has conferred on the City.

## PRAYER FOR RELIEF

WHEREFORE, Cradle of Liberty respectfully requests that this Court enter judgment in its favor and against the City. Further, Cradle of Liberty respectfully requests that this Court enter an order granting the following relief:

(a)     Permanently enjoining Defendant from commencing or continuing any proceedings to evict Cradle of Liberty from its headquarters based on Cradle of Liberty's adherence to Boy Scouts' constitutionally protected membership policy;

(b)     Declaring that the City's recent attempts to evict Cradle of Liberty constitute a breach of the agreement reached on January 23, 2004, whereby Cradle of Liberty agreed to adopt the Non Discrimination Statement in exchange for the City's forbearance in any efforts to evict Cradle of Liberty based on its membership policy.

(c)    Declaring that Defendant's refusal to afford Cradle of Liberty the same privileges available to other individuals and groups violates Cradle of Liberty's rights guaranteed by the Constitution and laws of the United States;

(d)    Awarding damages to Cradle of Liberty for the City's wrongful conduct, including compensatory and all other measures of damages legally allowed;

(e)    Alternatively, if it is determined that the City may lawfully require Cradle of Liberty to vacate its headquarters, awarding Cradle of Liberty just compensation for the premises and/or improvements.

(f)    Awarding to Cradle of Liberty its costs and expenses, including reasonable attorneys' fees incurred in connection with this action; and

(g)    Awarding to Cradle of Liberty all such other equitable relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims that can be so tried.

Respectfully submitted,

Dated: May 23, 2008

Jason P. Gosselin
William M. McSwain
Joseph L. Doherty, IV
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103

*Counsel for Plaintiff Cradle of
Liberty Council, Inc., Boy Scouts of
America*