**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


CRADLE OF LIBERTY COUNCIL, INC.,          :               CIVIL ACTION
BOY SCOUTS OF AMERICA,                            :
                                                                          :
                        Plaintiff,                              :               NO. 08-2429
                                                                          :
            v.                                                          :
                                                                          :
THE CITY OF PHILADELPHIA,                       :
                                                                          :
                        Defendant.                          :

## MEMORANDUM

BUCKWALTER, S. J.                                                              November 18, 2009


Without going into the entire background of this case, which is set forth in this court's

memorandum of September 25, 2008, the following section sets forth the salient factors

regarding the Plaintiff's motion for preliminary injunction now before the court:

1.        On May 23, 2008,  Plaintiff filed its complaint in this court alleging a violation of

its state and federal constitutional rights in the Defendant's efforts to remove Plaintiff from the

building it erected in 1929 at the corner of North 22nd and Winter Streets, a portion of land which

Defendant permitted Plaintiff to occupy in accordance with its Ordinance dated December 14,

1928.  (Pl. Ex. 1).

2.        On June 2, 2008, the Defendant filed an action for ejectment in the Philadelphia

Court of Common Pleas regarding the above land.

3.        From the outset, the parties had anticipated that the federal action would proceed

and that the state action would be stayed to the extent it involved federal issues.  In fact, a Joint

Proposed Scheduling Order dated June 8, 2009 was approved by this court and is presently in effect with a fixed trial date of April 21, 2010.

4.      This court has been advised by the parties that on October 29, 2009, the state court lifted the partial stay and set oral argument on the Defendant's motion for summary judgment for November 20, 2009, and set December 5, 2009 for a trial on the merits.

5.      Thereafter, on November 16, 2009, Plaintiff filed the present motion for a preliminary injunction and a hearing was held on November 17, 2009.

6.      From the evidence offered at the hearing, the court has determined that the Plaintiff has made a showing of a reasonable possibility of success on the merits based on the testimony and exhibits presented at the hearing, which includes:

(a)      Testimony that the Defendant told Plaintiff that its agreement with Plaintiff with respect to the property in question is terminated "subject to withdrawal upon agreement by the Boy Scouts to pay fair market rent or the Boy Scouts ending its discriminatory policy and practice." (*See* Pl. Ex. 7, City Council Resolution No. 070522).

(b)      Testimony that there appears to be no other instances where a lease was not renewed or somebody was asked to leave because of its membership policies. (Testimony of Barry Bessler; to the best of his knowledge).

(c)      Testimony of John Herzins regarding the review of Defendant's leases with the purpose of "capturing money" for Defendant. For example, having the Philadelphia Bar Association pay Defendant a certain sum for its present office space. None of the examples given by Herzins involved Fairmount Park buildings or issues involving membership policies.

(d)     Lack of testimony that the Defendant terminated Plaintiff for any other reason than its membership policy, testimony of Mr. Herzins, as stated above, having no connection with the Plaintiff's termination.

(e)     Evidence which suggests that other Fairmount Park property lessees have not been scrutinized as to their membership policies.  (*See* Bessler Dep. 0084:5-10; 0118:9-13; Pl's Ex. 15, listing the Fairmount Park Lessees).

Considering the first prong of the preliminary injunction determination (likelihood of success), the Plaintiff's factual evidence regarding its constitutional claims has not been rebutted at this stage of the litigation.

1.     <u>Equal Protection</u>

The evidence presented to date would support a finding that Defendant intentionally treated Plaintiff differently from other similarly situated lessees by solely subjecting it to scrutiny based on its membership policies and not doing the same to any of the other lessees, some of whom, *prima facie*, suggest membership policy scrutiny vis a vis the non-discrimination provisions of Defendant's Home Rule Charter might be appropriate.

Defendant argues that Plaintiff has not presented facts to find entities similarly situated, but the court disagrees.  The Fairmount Park Lessees shown in Exhibit 15 and specifically, 17, 18, 19, 20 and 21 support the similarly situated argument of Plaintiff.

Defendant then argues that even if Plaintiff can establish the "similarly situated" issue, it fails to demonstrate that there is no rational basis.  However, the City has offered no evidence to contradict the reason alleged by Plaintiff; namely, to punish Plaintiff for

its policy. While there may be legitimate justification, Defendant has yet to present evidence to support that position.

2.  First Amendment

In this court's memorandum of September 25, 2008, the court found sufficient allegations for motion to dismiss purposes to support Plaintiff's theory that the Defendant's program of leasing out space throughout the City at subsidized rates, "assuming there is such a program" is the relevant non-public forum. The evidence presented at the hearing on this motion establishes the likelihood of such a program. The Defendant's seeking to limit access to the non-public forum does not necessarily violate the First Amendment. If the limitation is reasonable and view point neutral, no violation occurs. Here, however, evidence of justification has not yet been presented to counter Plaintiff's allegations.

In the court's memorandum of September 25, 2008, a substantive part of it was devoted to Plaintiff's unconstitutional conditions claim beginning at p. 18. The court concluded that:

> the Complaint provides sufficient allegations to conclude that the City's actions may have compromised Cradle's First Amendment rights. In Boy Scouts of Am. v. Dale, the Supreme Court held that the "Boy Scouts is an expressive association and that the forced inclusion of [a gay scoutmaster] would significantly affect its expression. 530 U.S. 640, 656 (2000).

Having concluded the possible compromising of a First Amendment right, which the testimony at the hearing supports, here again, no evidence has been offered as to the scope of the condition. At this point the record only supports that the sole basis for termination is Defendant's policy. As noted in the prior memorandum, the scope of the condition appears to be narrow. Again,

even assuming a narrow scope, evidence with respect to view point neutrality and reasonableness is missing.

The second preliminary injunction prong is virtually conceded by Defendant in its acknowledging that loss of First Amendment freedoms "has been held to unquestionably constitute irreparable harm."

As to the third prong, public interest will not be jeopardized by granting this injunction. The public in a general sense is interested in protecting its constitutional rights and in a reasonably expeditious resolution of disputes. Both of these will be accomplished within the present framework of this litigation.

Finally, Defendant has not suggested that granting this preliminary injunction will result in even greater harm to it than if it were not granted.

Defendant has raised the Anti-Injunction Act. That Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (2009). In Mitchum v. Foster, the Supreme Court, after exploring the Anti-Injunction Act's origin and development as well as that of 42 U.S.C. § 1983, held that "§ 1983 is an Act of Congress that falls within the 'expressly authorized' exception of that law." 407 U.S. 225, 242-43 (1972). While the Court recognized that the Anti-Injunction Act's "basic purpose is to prevent needless friction between state and federal courts," the Court reasoned that Congress's primary purpose in drafting § 1983 – "to interpose the federal courts between the States and the people, as guardians of the people's federal rights," and to provide a "suit in

equity" to do so – constituted an exception to the Act.  <u>Mitchum v. Foster</u>, 407 U.S. 225, 232-33, 242-43 (1972) (internal quotation omitted).

In the case at bar, Cradle of Liberty's federal constitutional claims are asserted pursuant to § 1983.  Thus, these claims fall squarely under the "'expressly authorized' exception" to the Anti-Injunction Act that the <u>Mitchum</u> Court recognized for § 1983 claims.  407 U.S. at 242-43; <u>see also</u> <u>Johnson v. Kelly</u>, 583 F.2d 1242, 1250 (1978) (concluding that the "jurisdictional limitation of the Anti-Injunction Act, 22 U.S.C. § 2283, is inapplicable to cases brought pursuant to 42 U.S.C. § 1983").  In turn, the Anti-Injunction Act does not hinder this Court's ability to enjoin the state court action.

Finally, Defendant has also raised the <u>Younger</u> abstention argument.  The <u>Younger</u> abstention doctrine requires a federal court that is moved to enjoin a state proceeding to consider principles of "equity, comity, and federalism." <u>Mitchum</u>, 407 U.S. at 243 (referring to <u>Younger v. Harris</u>, 401 U.S. 37 (1971)).  "[A]bstention under <u>Younger</u> is appropriate only where: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." <u>Gwynedd Properties, Inc. v. Lower Gwynedd Twp.</u>  970 F.2d 1195, 1199 -1200 (3d Cir. 1992) (citing <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431 (1982)).  The Supreme Court, however, "has emphasized that a court should abstain only in rare cases." <u>Olde Discount Corp. v. Tupman</u>,  1 F.3d 202, 211 (3d Cir. 1993) (analyzing the Supreme Court's treatment of the abstention doctrine).  Moreover, "even in the presence of the necessary predicates for <u>Younger</u> abstention, abstention is not appropriate," in certain circumstances.  <u>Gwynedd</u>, 970 F.2d at 1200 (noting that <u>Younger</u> abstention is not required if the

state proceedings are in bad faith or "based on a flagrantly unconstitutional statute," neither of which is at issue here). Particularly salient to the case at hand, the Supreme Court has recognized a crucial exception to <u>Younger</u> abstention: "[i]f the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system." <u>Ohio Bureau of Employment Services v. Hodory</u>, 431 U.S. 471, 480 (1977) (concluding that Ohio's submission of the constitutional issues to federal court did not require abstention); <u>see also</u> <u>Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.</u>, 477 U.S. 619, 626 (1986) (noting that through "consent or waiver" a state may forfeit its abstention argument).

Here, although the three <u>Younger</u> factors arguably apply, the <u>Hodory</u> waiver exception renders the City's abstention argument moot. In the course of litigation in both federal and state court, the City has voluntarily submitted to a federal forum. The City took a number of steps that reveal its willingness to pursue its claims against Cradle of Liberty in this Court. First, the City filed with this Court a Motion to Dismiss for Failure to State a Claim on June 16, 2009, just days after it filed its state action on June 2, 2008. While not dispositive, the filing of a Motion to Dismiss on the substance of Cradle of Liberty's federal claims demonstrates the City's pursuit of this case in a federal forum. Second, and most importantly, the City – along with Cradle of Liberty – filed a Joint Motion for Stay of the state court action pending this Court's disposition of the City's Motion to Dismiss. The Joint Motion for Stay was filed on July 2, 2008. Thus only a month after filing its state complaint the City sought to have this Court resolve the dispute. Although notions of efficiency served as at least the partial rationale for its filing, the Joint Motion demonstrates the City's intention to submit this case for federal consideration. The City

actively litigated the substance of its case and even requested the state court to sit in abeyance

pending resolution of its motion in a federal forum.  Taken in their totality, the City's actions

demonstrate that the City was more than a mere participant in the action before this Court.  See

Sharkey's, Inc. v. City of Waukesha, 265 F. Supp. 2d 984, 988 (E.D. Wis. 2003) (determining

that city waived its right to assert Younger abstention argument when it entered into an

agreement with Plaintiff to defer proceedings in municipal court pending a federal court's

resolution of the constitutionality of the ordinances at issue); Norton v. Town of Islip, 239 F.

Supp. 2d 264, 275 (E.D.N.Y. 2003) (concluding that town's delay of a criminal prosecution for

five years with the apparent intention of waiting for a federal court to rule on Plaintiff's

constitutional claims indicated the town's willingness to submit to a federal forum, and thus,

waived the town's abstention argument).  Pursuant to Hodory, the City cannot now seek to

reverse course, having waived its right to argue abstention.

An order follows.