IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRADLE OF LIBERTY COUNCIL, INC., <br> BOY SCOUTS OF AMERICA, <br> <br> Plaintiff, <br> <br> v. <br> <br> CITY OF PHILADELPHIA, <br> <br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> CIVIL ACTION <br> <br> NO. 08-2429 |

## **ORDER**

**AND NOW**, this ____ day of January, 2010, upon consideration of the parties' memoranda on the Rule 65(c) requirement of a bond for the preliminary injunction entered by this Court on November 19, 2009, it is hereby **ORDERED** that (a) a bond is required and (b) a hearing on the amount of the bond will be conducted on _____, 2010 at _____ __.m. in Courtroom 14A, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania.

BY THE COURT:

_____
Hon. Ronald L. Buckwalter, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRADLE OF LIBERTY COUNCIL, INC., BOY SCOUTS OF AMERICA, : : : Plaintiff, : : v. : : CITY OF PHILADELPHIA, : : Defendant. : | CIVIL ACTION NO. 08-2429 |

**DEFENDANT CITY OF PHILADELPHIA'S
MEMORANDUM OF LAW REGARDING THE REQUIREMENT
OF A BOND UNDER FEDERAL RULE OF PROCEDURE 65(c)**

Defendant, City of Philadelphia ("City"), submits this Memorandum of Law to demonstrate that a substantial bond is required under Federal Rule of Procedure 65(c) for the preliminary relief ordered by this Court on November 19, 2009.

**I.    STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS**

The Court granted the motion of Cradle of Liberty Council, Inc., Boy Scouts of America ("Boy Scouts") for a preliminary injunction on November 19, 2009, enjoining the City from taking any further steps to pursue ejectment and requiring the immediate dismissal of the City's lawsuit pending in the Court of Common Pleas of Philadelphia County, Pennsylvania. The City filed a motion for reconsideration of the Court's Order and on January 6, 2010, the Court granted the motion in part and ordered "a hearing on the issue of whether the Court should require a bond pursuant to Rule 65(c), and if so, in what form or amount." The hearing was scheduled for January 19, 2010.

Counsel for the City entered their appearance on January 13, 2010 and sought a brief postponement of the hearing to allow time to complete their review of the file, contact witnesses who were not available over the holiday weekend and prepare for the hearing. Although the Boy Scouts initially withheld the customary professional courtesy of not opposing a short postponement to enable new counsel to prepare, they did agree in the courtroom to the procedure now adopted by the Court: simultaneous memoranda on Friday, January 22, 2010, and a later hearing on the amount of the bond, if a bond is required by the Court.

**II.     ARGUMENT**

Rule 65(c), by its plain language, makes the requirement of a bond mandatory: "The court may issue a preliminary injunction or a temporary restraining order ***only if*** the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). The Third Circuit has "interpreted the bond requirement very strictly," *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210 (3d Cir. 1990), and, as this Court acknowledged, "'[w]hile there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory.'" Jan. 6, 2010 Mem. Op. at 9-10, quoting *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988).

Before the Third Circuit's decision in *Temple University v. White*, 941 F.2d 201 (3d Cir. 1991), "no Third Circuit case … had upheld a district court's excuse of the bond requirement," *Hoxworth*, 903 F.2d at 210, and, notably, no Third Circuit case has done so since. Indeed, just last week the Third Circuit again reiterated that the *Temple University* exception is "extremely narrow" and held "a district court lacks discretion under *Rule 65(c)* to waive a bond

2

requirement other than in the exceptionally narrow circumstance in which the nature of the action *necessarily precludes any monetary harm* to the defendant." *Zambelli Fireworks Mnf'g Co., Inc. v. Wood*, 2010 U.S. App. LEXIS 955, *38 (3d Cir. Jan. 15, 2010) (emphasis added).

Even if it were not already clear by the *Temple University* opinion itself, subsequent Third Circuit decisions reinforce that to the extent *Temple University* can be viewed as precedent to permit a preliminary injunction without requiring a bond, that precedent is limited to: (a) a "noncommercial case" in which there is "virtually no risk" of harm to the party sought to be enjoined, (b) the party seeking the preliminary relief is "on the brink of financial ruin and will become insolvent" without the preliminary relief and (c) the bond requirement will prevent the party seeking preliminary relief from enforcing a right granted by federal law.  941 F.2d at 219-20.

As we shall discuss, none of the requirements of *Temple University* is present in this case:  it cannot be said that the City has "virtually no risk" of harm; the Boy Scouts have not asserted -- let alone demonstrated -- that they are on the brink of financial ruin; and the bond requirement will not affect the Boy Scouts' ability to pursue enforcement of their alleged constitutional rights.

A.     **It Cannot Be Said That The City Has Virtually No Risk of Harm.**

"When a *risk* of financial harm exists for the party to be enjoined, the posting of a security bond is required." *Alexander v. Edwards*, 811 F. Supp. 1025, 1036 (D.N.J. 1993) (finding "[c]entral to the holding in *Temple University* was the fact that *no threat* of loss to the defendant was presented by issuing the requested injunction") (emphasis added).

3

The Boy Scouts have acknowledged the risk of financial harm to the City in pointing to the City's counterclaim for holdover rent as a damage that will result from the preliminary injunction. Mem. in Opp. to Def.'s Mot. for Reconsideration (Dkt. 36) at 6. That the City has asserted a counterclaim for holdover rent does not absolve the Boy Scouts from the bond requirement of Rule 65(c). Contrary to the Boy Scouts' argument in opposition to the motion for reconsideration, nothing in Rule 65(c) or Third Circuit case law suggests that the existence of a counterclaim for [some of] the same damages that will result from imposition of a preliminary injunction somehow excuses the requirement of a bond.

The risk of financial harm to the City is inarguable. The pleadings establish as uncontested that the City offered the Boy Scouts the opportunity to continue their occupancy if they would agree to pay "fair market rent." The City pursued its state court ejectment remedy only when the Boy Scouts refused for a full year to enter into an agreement to pay "fair market rent." While there may be disagreement over what is the "fair market rent" (the City has produced the expert appraisal report of Dwaine Whitley assessing the fair market rental value of the property at issue as $200,000 per month), there can be no disagreement that the "fair market rent" is substantial and the Boy Scouts have refused to pay it for more than a year.

In addition to the financial harm of lost rental income, the City is harmed as well by its inability to enforce its anti-discrimination policies in the public interest, and by the damage to its anti-discrimination efforts caused by a forced subsidy to an organization that practices discrimination.

The City has a compelling interest in eliminating discrimination, including discrimination based upon sexual orientation. Indeed, the Supreme Court has held that the

4

interest of a state or local government in ending discrimination is a "compelling state interest of the highest order." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987) (holding California's interest in ending discrimination through the Unruh Civil Rights Act is "compelling" and finding anti-discrimination laws promote "compelling state interest of the highest order"); *New York State Club Assn., Inc. v. City of New York*, 487 U.S. 1, 12 (1988) (upholding New York City Human Rights Law, noting the "city's compelling interest in eliminating discrimination"). The City similarly has a compelling interest in its own efforts to avoid supporting the discriminatory conduct of others, such as by a forced rent subsidy to the Boy Scouts, who practice discrimination in the name of supposed higher moral standards. That harm cannot be overstated. As the Supreme Court noted in *Lawrence v. Texas*, 539 U.S. 558, 575 (2003), "[w]hen homosexual conduct is made criminal by the law of the State, that declaration in and of itself is an invitation to subject homosexual persons to discrimination both in the public and private spheres." Similarly, the City rationally can view its rent subsidy to the Boy Scouts -- whether or not compelled -- as a poor example that encourages discrimination.

      **B.**    **The Boy Scouts Have Not Asserted -- Let Alone Demonstrated -- That They Are On The Brink of Financial Ruin.**

Where the party seeking an injunction is able to post a bond, the requirement cannot be waived. *See, e.g, Church of Universal Love & Music v. Fayette County*, 2009 U.S. Dist. LEXIS 74919, *4 (W.D. Pa. Aug. 24, 2009) (distinguishing *Temple University* because it addressed "an entity 'on the brink of financial ruin'" and requiring a bond); *Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 535 (D.N.J. 1999) (requiring bond where the plaintiff was not "an impecunious party"); *In re Nat'l Credit Mgmt. Group, LLC v. Glen Buzzetti*, 21 F. Supp.

5

2d 424, 464 (D.N.J. 1998) (holding State of New Jersey "is not an impecunious party" and will not suffer economic duress from imposition of a bond).

The Boy Scouts have not claimed to be on the brink of insolvency. Indeed, they cannot. According to their IRS Form 990s, which are available online for public inspection, the Boy Scouts' executive director received over $300,000 in compensation and their total assets exceed $20 million. The Boy Scouts are chartered by and run the programs of the Boy Scouts of America, an organization with total assets in excess of $660 million with a Chief Executive who is paid over $1 million annually.

The Boy Scouts are clearly capable of posting a bond to cover the City's costs and damages incurred resulting from the preliminary injunction, and should be required to do so.

C.  **The Requirement of a Bond Will Not Affect The Boy Scouts' Ability To Pursue Enforcement Of Their Alleged Constitutional Rights.**

The Boy Scouts are not on the brink of insolvency and will not be prevented from pursuing their constitutional claims if it they are required to post a bond. Accordingly, the final requirement for application of the *Temple University* waiver of the bond requirement is not present here. A bond therefore must be required.

Even if this final element were to be characterized as a "balancing of the equities" test, it cannot be satisfied here. Since *Temple University*, the Third Circuit has clarified, in addition to satisfaction of the other requirements for waiver of a bond, a waiver can be appropriate only "where the balance of these equities weighs overwhelmingly in favor of the party seeking injunction." *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)*; See also, Zambelli*, 2010 U.S. App. LEXIS at *36-37 (recognizing "exceptions in other contexts ***only***

6

*where* 'the balance of [the] equities weighs overwhelmingly in favor of the party seeking the injunction'") (quoting *Elliott*) (alterations in original). The *Temple University* exception "remains narrow and may only be invoked by the District Court upon specific findings regarding the relative hardships to each party." *Scanvec Amiable Ltd. v. Chang*, 90 Fed. Appx. 171, 175 (3d Cir. 2003); *Elliott*, 98 F.3d at 60 (holding same).

The harm to the City is not only the financial loss in fair market rent, but also the restraint on allowing the City to pursue its compelling interest in eradicating discrimination and enforcing its Home Rule Charter, Fair Practices Ordinance and City policies. By contrast, the bond requirement in this case will not affect the Boy Scouts' ability to enforce its alleged constitutional rights and does not restrict their ability to pursue their claim. A substantial bond should be required.

### III.     CONCLUSION

For all of these reasons, this Court should require the Boy Scouts to post a bond and hold an evidentiary hearing to determine the amount "proper to pay the costs and damages" sustained by the City if it is determined that the City has been wrongfully enjoined from pursuing ejectment.

        /s/ David Smith
David Smith (Attorney I.D. 21480)
Rebecca Lacher (Attorney I.D. 203938)
*Attorneys for Defendant,*
 *City of Philadelphia*

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania  19103-7286
(215) 751-2000

        Of Counsel.

Dated:  January 22, 2010.

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January, 2010, I electronically filed a copy of the Defendant City Of Philadelphia's Memorandum Of Law Regarding The Federal Rule Of Procedure 65(c) Bond Requirement using the CM/ECF system, which will send notification of such filings to CM/ECF participants, including:

> Jason P. Gosselin, Esquire
> Daniel B. Scott, Esquire
> Richard M. Haggerty, Jr., Esquire
> Drinker Biddle & Reath LLP
> One Logan Square
> 18th and Cherry Streets
> Philadelphia, PA 19103

/s/ Rebecca Lacher
Rebecca Lacher (Attorney I.D. 203938)