# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRADLE OF LIBERTY COUNCIL, INC., BOY SCOUTS OF AMERICA, | : : : | CIVIL ACTION |
| Plaintiff, | : : | NO. 08-2429 |
| v. | : : | |
| THE CITY OF PHILADELPHIA, | : : | |
| Defendant. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                              March 2, 2010

Currently at issue in this case are the Supplemental Memoranda of Defendant City of Philadelphia ("the City") and Plaintiff Cradle of Liberty Council, Inc., Boy Scouts of America ("Cradle of Liberty") on whether the Court should require the posting of a bond, pursuant to Federal Rule of Civil Procedure 65(c), in relation to the issuance of a preliminary injunction in favor of Cradle of Liberty and against the City. For the reasons discussed below, the Court requires Cradle of Liberty to post a bond, and orders a hearing to determine the precise amount.

**I.     BACKGROUND**

On November 18, 2009, the Court issued an Order both enjoining the City from further prosecuting its ejectment action pending in the Philadelphia Court of Common Pleas and requiring the City to dismiss without prejudice its claims before that court. Shortly thereafter, the City filed a Motion for Reconsideration, or in the Alternative, for Dissolution of the Preliminary Injunction on November 25, 2009. Plaintiff responded to the City's Motion via its Memorandum in Opposition filed on December 15, 2009. On January 6, 2010, the Court substantially denied

the City's Motion for Reconsideration, but acknowledged the prior Order's clear error in failing to consider the posting of a bond under Rule 65(c). To that end, the Court held a hearing on January 19, 2010, during which the City and Cradle of Liberty agreed to submit memoranda as to the propriety of a bond. The Court now turns to the parties' arguments as to the bond requirement.

## II.     DISCUSSION

Federal Rule of Civil Procedure 65(c), in relevant part, provides: "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(C). The Third Circuit strictly interprets Rule 65(c) to "require[] a successful applicant for a preliminary injunction to post a bond . . . ." Sprint Commc'n Co. L.P. v. CAT Commc'n Intern, Inc., 335 F.3d 235, 239 (3d Cir. 2003).

At the same time, the Third Circuit, in Temple University, recognized two categories of exceptions to this general rule. See Temple Univ. v. White, 941 F.2d 201, 219-20 (3d Cir. 1991). First, the Third Circuit provided that a district court in deciding whether to require a bond should first examine "[t]he equities of potential hardships to the parties." Id. at 220. Accordingly, "'at least in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant.'" Id. at 219 (quoting Crowley v. Local No. 82, Furniture & Piano, 679 F.2d 978 (1st Cir. 1982), rev'd on other grounds, 467 U.S. 526 (1984)). Certainly the risk of financial loss stemming from the injunction to the enjoined party, and the ability of the applicant to pay a bond are factors in this

2

balancing of equities. Id. at 219-20 (noting that the equities of the case – applicant's near financial insolvency and that enjoined party would be required to pay additional funds to the applicant regardless of the issuance of a bond, and thus could recoup any excessive payment by withholding future funds – "weighed in favor of waiving the bond requirement."); see also Elliot v. Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996) (failure to make findings regarding the financial hardships that a bond requirement would impose constitutes reversible error); Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC, 513 F. Supp. 2d 304, 322 (E.D. Pa. 2007) (addressing the "risk of harm" to enjoined party in relation to issuance of a bond). Second, a "district court should consider the impact that a bond requirement would have on enforcement of [an important federal right or public interest] in order to prevent undue restriction [of them]." Temple Univ., 941 F.2d at 220. Most recently the Third Circuit has reiterated that "'[w]hile there are exceptions, the instances which a bond may not be required are so rare that the requirement is almost mandatory.'" Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 426 (3d Cir. 2010) (quoting Frank's GMC Truck Ctr., Inc. v. Gen Motors Corp., 847 F.2d 100, 103 (3d Cir. 1988)).[1]

With the limited nature of these exception in mind, the Court now considers their application to the case at hand.

---

[1] Although the Third Circuit, in Zambelli, recently held that "a district court lacks discretion under Rule 65(c) to waive a bond requirement except in the exceptionally narrow circumstance where the nature of the action necessarily precludes any monetary harm to the defendant," Zambelli also reaffirmed Temple University. See Zameblli, 592 F.3d at 426 (expressly acknowledging "exceptions in other contexts only where 'the balance of [the] equities weighs overwhelmingly in favor of the party seeking the injunction' and when the District Court 'make[s] specific findings.'" (quoting Elliot v. Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996) and also citing Temple Univ., 941 F.2d at 219 n.26)).

3

### A. Balancing of the Equities

#### 1. Possible Loss to Enjoined Party

In relation to the first category of exception recognized in Temple University, the City argues that the risk of financial harm resulting from the preliminary injunction weighs in favor of requiring Cradle of Liberty to post a bond. To this end, the City claims that the injunction has prevented them from pursuing a state court ejectment remedy, and that the back-rent for Cradle of Liberty's continued use of the Scout Resource Center is substantial. Indeed, in its Memorandum, the City points to expert testimony placing the fair market rent of the Scout Resource Center at $200,000 per month. Thus, the City argues for the Court to accept the conclusion that as a result of the preliminary injunction the City is unable to pursue its state court action, and cannot collect the rent it believes it is owed. Cradle of Liberty responds that the City can still – in effect – pursue its ejectment claim through its counterclaim for holdover rent asserted in the instant action. Furthermore, Cradle of Liberty asserts that the City's risk of financial harm is too speculative, since the City first would have had to prevail in its state court ejectment action before obtaining any back-rent.

Here, the Court finds that the City faces a risk of financial harm even as they pursue their case before this Court. Any potential delay in the resolution of this case as the result of Cradle of Liberty's filing of a preliminary injunction increases the period of uncertainty for the City as to whether it may charge back-rent or reapportion use of the Scout Resource Center. Unlike in Temple University, where the Third Circuit waived the bond requirement after finding that "virtually no risk" of financial loss existed for the enjoined party, such financial loss in this case is quite possible. 941 F.2d at 219-220.

Moreover, the policy framework undergirding Rule 65(c) supports requiring a bond in this case. In summarizing the rationale for a bond requirement to accompany the issuance of a preliminary injunction, the Third Circuit has noted "that the injunction bond serves not only to compensate a wrongfully enjoined party, but generally to limit the applicant's liability and inform the applicant of the price of a wrongful injunction." Sprint, 335 F.3d 235, 240 n.5 (3d Cir. 2003). The Court recognizes that a bond requirement would help ensure the efficient resolution of this case by informing the parties of the stakes involved in the preliminary injunction and in continuing this course of litigation.

### 2. Hardship a Bond Requirement Would Impose on Cradle of Liberty

The Court finds that the mere imposition of a bond on Cradle of Liberty would not constitute an undue financial hardship. Cradle of Liberty does not assert that it is unable to post a bond, and as the City points out, Cradle of Liberty is a financially solvent organization with a well-paid executive director and a substantial wealth of assets. The Court concludes, therefore, that potential financial hardship does not provide sufficient grounds to waive the requirement of a bond. See Marsellis-Warner Corp. v. Rabens, 51 F. Supp. 2d 508, 535 (D.N.J. 1999) (requiring a bond where applicant did not appear to be an "impecunious party" nor did there appear to be any "reason why applicant [could not] set aside adequate revenues to satisfy a bond requirement. . . ."). Nevertheless, potential financial hardship may serve as a factor in the Court's future determination as to the amount or form of such a bond. See 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2954 (2d ed. 2009).

### B. Protecting Federal Rights or Public Interests

As to the second category of exception recognized in Temple University, Cradle of Liberty asserts that a bond requirement would constitute an undue restriction upon exercise of its constitutional rights, and thus it requests a waiver pursuant to the exception to the bond requirement for assertion of "important federal rights or public interests." Temple Univ., 951 F.2d at 219 (internal quotations omitted). Cradle of Liberty emphasizes that, through this federal action, it seeks to vindicate its "right to expressive association and to be treated the same as similarly-situated organizations leasing Fairmount Park property from the City." (Pl.'s Mem. Opp. 4.)

While the Court agrees that this action – at least in part – seeks to enforce important federal rights, the Court finds that the mere requirement of a bond will not necessarily place an undue restriction upon Cradle of Liberty's constitutional rights. A number courts dealing with circumstances involving important federal rights or public interests have adjusted the amount of the bond to prevent any undue restriction. See, e.g., Church of Universal Love & Music v. Fayette County, No. CIV.A.06-872, 2009 WL 2612313, at *1 (E.D. Pa. Aug. 24, 2009; Stilp v. Contino, 629 F. Supp. 2d 449, 468 (M.D. Pa. 2009); Hayden v. Freightcar Am., Inc., No. CIV.A.07-201, 2008 WL 3575762, at *67-68 (W.D. Pa. 2008). Likewise, at the subsequent hearing to determine the amount of the bond, the Court will carefully consider any potential undue restriction on Cradle of Liberty's constitutional rights. For the purposes of the current decision, however, the Court concludes that Cradle of Liberty's protection of a federal right does not require the Court to waive Rule 65(c)'s bond requirement.

## III. CONCLUSION

Having considered the balance of equities in the present case as well as Cradle of Liberty's claim to enforce an important federal right, the Court concludes that it will require Cradle of Liberty to post a bond to accompany the preliminary injunction previously issued.[2]

---

[2] Cradle of Liberty additionally argues that an exception to Rule 65(c)'s bond requirement exists where a court issues a preliminary injunction to preserve its jurisdiction. See Doctor's Assoc., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996). Although the Court appreciates this argument, it declines to adopt this exception to the bond requirement in light of both the absence of a direct holding from the Third Circuit on the matter and the Circuit's admonition that the bond requirement rarely should be waived. See Zambelli, 592 F.3d at 426.