IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRADLE OF LIBERTY COUNCIL, INC., BOY SCOUTS OF AMERICA, : : : | |
| Plaintiff, : : | CIVIL ACTION |
| v. : : | NO. 08-2429 |
| CITY OF PHILADELPHIA, : : | |
| Defendant. : | |

**PRETRIAL MEMORANDUM OF
DEFENDANT CITY OF PHILADELPHIA**

**I.    SUMMARY OF THE NATURE OF THE CASE.**

This case presents the issue whether the City must continue to provide rent-free occupancy of a City-owned property at 22nd and Winter Streets to an organization that openly discriminates in their use of that property in violation of the City's non-discrimination laws, policies and practices.

In May of 2003, after losing financial support from Philadelphia charitable organizations, the Boy Scouts announced that they would no longer discriminate against gays in their membership, services, employment and adult leadership. Just weeks after this announcement, however, under pressure from their parent organization, the Boy Scouts of America ("BSA"), the Boy Scouts quickly reverted to BSA-mandated policies and practices to discriminate against gays and non-believers.

The Boy Scouts' reversion to the BSA-mandated discriminatory policies and practices in their use of a rent-free City property put them squarely in violation of the City's non-discrimination laws and policies. The City received numerous complaints from the public regarding the Boy Scouts' receipt and enjoyment of City subsidies while they adhered to policies and practices that exclude individuals on the basis of sexual orientation and religion. After a multi-year negotiation failed to restore the Boy Scouts' non-discrimination pledge, the City notified the Boy Scouts that it was terminating the Boy Scouts' rent-free occupancy of the City's property under the 1928 ordinance governing that occupancy. Even then, the City offered the Boy Scouts the alternative to remain in the property either by complying with the City's non-discrimination laws or by agreeing to pay fair market rent for the property, which would at least end the City's subsidy of the Boy Scouts' discrimination. The Boy Scouts refused both, and seeking to retain their rent-free occupancy of City property, they filed this lawsuit alleging violations of equal protection and free speech.

The Boy Scouts' class of one equal protection claim fails for each of three independent reasons: (1) the Boy Scouts cannot prove the required clear standards for providing rent-free occupancy because the City's granting of rent-free occupancies are based on discretionary and individualized determinations; (2) the Boy Scouts cannot meet their burden of showing similarly situated entities who were treated differently; and (3) the City's refusal to continue the Boy Scouts' rent-free occupancy is rationally related to its legitimate interest in upholding important City policies and practices of non-discrimination.

The Boy Scouts' First Amendment viewpoint discrimination and unconstitutional condition claims also fail. Regulations prohibiting discrimination, such as the City's Home Rule

Charter, Fair Practices Ordinance and the non-discrimination policy of Fairmount Park regulate conduct, not speech. The laws and policies direct what the Boy Scouts must *do* to obtain rent-free occupancy of City-owned property; they do not compel the Boy Scouts to make any statement about religion, homosexuality, or any speech whatsoever. The purpose of the City's subsidized use of City-owned property is not to encourage a diversity of views, but is meant to both benefit the community at-large by providing recreational and similar opportunities and ensure that city-owned properties are restored, preserved and maintained at minimal cost to the City. Since the purpose of the subsidy was not to create a forum for expressive activity, the subsidy is not a forum for speech.

Furthermore, the City has a right to control its own message through the allocation of its subsidy. In terminating the Boy Scouts' subsidized occupancy of City property, the City is not suppressing a disfavored viewpoint, but is exercising its broad discretion to make selective funding decisions. The City is entitled to condition its subsidy on compliance with its reasonable and viewpoint neutral non-discrimination laws, which are not intended to suppress the Boy Scouts' speech or prevent the Boy Scouts from speaking anywhere not connected to their subsidized occupancy.

## II.  WITNESSES EXPECTED TO BE CALLED.

Below is a list of potential witnesses that the City may call at trial. The City reserves the right to modify or supplement this list as new information becomes available, to call additional witnesses in rebuttal, and to call any witnesses listed by Plaintiff.

**Witnesses**

Romulo Diaz, Jr., former City Solicitor, will testify to the anti-discrimination focus of Mayor Street's administration, the City's evaluation of the Boy Scouts' discriminatory policy, his communication with the Boy Scouts regarding their discriminatory policies and the alternatives offered to the Boy Scouts, and the City's decision to terminate and the termination of the Boy Scouts' occupancy of the 22nd Street Property.

Joyce Wilkerson, former Chief of Staff to Mayor Street, will testify to the anti-discrimination focus of Mayor Street's administration, the City's evaluation of the Boy Scouts' discriminatory policy, communication with the Boy Scouts, and the City's decision to terminate and the termination of the Boy Scouts' occupancy of the 22nd Street Property.

Lewis Rosman, former Assistant City Solicitor in the Appeals and Legislation Unit, will testify to his communication with the Boy Scouts regarding their discriminatory policy, the City's decision to examine its relationship with the Boy Scouts, and the City's decision to terminate and the termination of the Boy Scouts' occupancy of the 22nd Street Property.

Barry Bessler, Chief of Staff of Fairmount Park, will testify to the Fairmount Park policies and procedures related to the rent-free occupancy of City property, the City's reasons for providing rent-free occupancy to nonprofit organizations, and the history of the Boy Scouts' occupancy of the City-owned property.

R. Duane Perry will testify to the Boy Scouts' adoption of a nondiscriminatory policy, the Boy Scouts' rescission of that policy, his direct communication with the Boy Scouts and the City regarding the Boy Scouts' discriminatory policies and practices, the withdrawal of

support by charitable organizations because of the Boy Scouts' discriminatory policy, and his involvement on the LGBT Advisory Board to the Mayor of Philadelphia.

Gregory Lattera will testify to his personal experience as a Boy Scout in the Cradle of Liberty Council, the Cradle of Liberty Council's policies with regard to sexual orientation, and his expulsion because of his sexual orientation.

Dr. Carrie Jacobs, executive director of the Attic Youth Center, will testify to her personal knowledge of the impact of discrimination against LGBT youth, her work in teaching about understanding the unique issues faced by LGBT youth, and her work with the LGBT Advisory Board to the Mayor.

William Dwyer will be called as an adverse witness, if not called by Plaintiff, to testify to the Boy Scouts' policies and practices, the activities of the Boy Scouts' board, and the Boy Scouts' communication with the City regarding their discrimination and occupancy of the property.

John L. Braxton will be called as an adverse witness, if not called by Plaintiff, to testify to the Boy Scouts' policies and practices, the activities of the Boy Scouts' board, and the Boy Scouts' communication with the City regarding their discrimination and occupancy of the property.

Mark Chilutti will be called as an adverse witness, if not called by Plaintiff, to testify to the Boy Scouts' policies and practices, the activities of the Boy Scouts' board, and the Boy Scouts' communication with the City regarding their discrimination and occupancy of the property.

Reaves C. Lukens, III will present expert testimony on the fair market rental value and fair market purchase value of the 22nd Street property.

**III.   LIST OF EXHIBITS**

Attached as Appendix A is a list of the exhibits the City may offer into evidence at trial. Attached as Exhibit B is a list of the exhibits the Boy Scouts may offer into evidence The exhibits are pre-numbered and have been exchanged between the parties. Those exhibits to which the City objects are indicated and the reason for the objection is provided. In addition, the City may use any exhibits referenced in any deposition transcript that is used at trial

The City has not identified exhibits that may be used solely for purposes of cross-examination. The City understands that such exhibits need not be listed. The City reserves the right to offer any documents not yet produced to the City and to supplement the exhibit list prior to trial.

**IV.   STATEMENT OF CITY'S DAMAGES**

The City seeks approximately $333,000 in damages in its counterclaim. The fair market rent for their occupancy from June 2, 2008 through the date of their eviction. Trial will commence on June 14, 2010 and is expected to last at least one full week. The City therefore seeks twenty-five months of back rent owed.

The City will present expert testimony that the fair market rental value of the property is $160,000 per year. The City therefore seeks $13,333 for each month of rent owed, totaling no less than $333,333.

The City intends to apply for attorneys' fees and costs if it is the prevailing party.

## V. STATEMENT OF LEGAL ISSUES REQUIRING COURT RULING

The following legal issues require resolution by the Court:[1]

**Anticipated Equal Protection Issues:**[2]

1) Whether the Cradle of Liberty Council's class of one equal protection claim fails because the decision to grant or continue a rent-free occupancy is discretionary and based on a vast array of subjective, individualized assessments? *Engquist v. Oregon Dep't of Agric.,* 128 S. Ct. 2146, 2154 (2008).

2) Whether the Cradle of Liberty Council has met its burden of proving there are similarly situated entities continuing to receive rent-free occupancy that are prima facie identical in all relevant aspects to the Cradle of Liberty Council? *United States v. Moore,* 543 F.3d 891, 896 (7th Cir. 2008) ("To be considered 'similarly situated,' the class-of-one challenger and his comparators must be 'prima facie identical in all relevant respects….'")

   a. Whether Saint Joseph's University is prima facie identical in all relevant aspects to the Cradle of Liberty Council?

   b. Whether the Colonial Dames of America is prima facie identical in all relevant aspects to the Cradle of Liberty Council?

   c. Whether the Roman Catholic Church of the Maternity, B.V.M. is prima facie identical in all relevant aspects to the Cradle of Liberty Council?

---

[1] The City acknowledges the Court's pretrial procedures request the anticipated legal issues be accompanied with a single best authority. The City has endeavored to abide by the Court's request and provides additional citations only where necessary to establish the legal point at issue.

[2] "The equal protection provisions of the Pennsylvania Constitution are analyzed . . .under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution." *Love v. Stroudsburg,* 597 A.2d 1137, 1139 (Pa. 1991). The legal analysis of the Boy Scouts' claim under Article I, § 26 of the Pennsylvania Constitution is therefore the same as set forth in the questions addressing the Boy Scouts' claims under the United States Constitution.

3) Whether the Cradle of Liberty Council has met its burden to show that there are similarly situated entities that were treated differently based upon clear standards and an objective assessment?

4) Whether the City has a clearly established policy and practice of non-discrimination that applies to all recipients of rent-free occupancy?

   a. Whether the City has a legitimate interest in its policy and practice of non-discrimination? *Sammon v. New Jersey Bd. of Medical Examiners*, 66 F.3d 639, 645 (3d Cir. 1995) ("Determining whether a particular legislative scheme is rationally related to a legitimate governmental interest is a question of law."); *8131 Roosevelt Blvd. Corp. v. City of Phila.*, 2003 U.S. Dist. LEXIS 144, *24 (E.D. Pa., Jan. 6, 2003) (whether action is rationally related to legitimate government interest is question of law).

   b. Whether a need for protection from discrimination on the basis of sexual orientation exists? *Rowland v. Mad River Local Sch. Dist.*, 470 U.S. 1009, 1014 (Brennan, J. dissenting) (stating "homosexuals have historically been the object of pernicious and sustained hostility, and it is fair to say that discrimination against homosexuals is 'likely . . . to reflect deep-seated prejudice rather than . . . rationality.'"); *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 573 (9th Cir. 1990) (acknowledging "that homosexuals have suffered a history of discrimination"); *Ben-Shalom v. Marsh,* 881 F.2d 454, 465-66 (7th Cir. 1989) (stating that "[h]omosexuals have suffered a history of discrimination and still do").

   c. Whether the City has a legitimate interest in eliminating discrimination based on sexual orientation? *Bd. Of Dirs. Of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 549 (1987) (holding California's interest in ending discrimination through the Unruh Civil Rights Act is "compelling" and finding anti-discrimination laws promote "compelling state interests of the highest order"); *N.Y. State Club Assn., Inc. v. City of N.Y.*, 487 U.S. 1, 17 (1988) (upholding New York City Human Rights Law, noting the "city's compelling interest in eliminating discrimination"); *Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio*, 902 F. Supp. 492, 521 (D.N.J. 1995) ("New Jersey has described its interest in eliminating discrimination on the basis of . . . sexual orientation . . . as being of 'preeminent social significance.' . . . New Jersey's interest is not only substantial but also can be characterized as compelling").

5) Whether the City's refusal to allow the Boy Scouts to continue their rent-free occupancy because of the Boy Scouts' discriminatory policy and practice is rationally related to the City's legitimate interest in upholding the City's policy and practice of non-discrimination? *1064 Old River Rd., Inc. v. City of Cleveland*, 137 Fed. Appx. 760, 765 (6th Cir.2005).

**Anticipated First Amendment issues:**[3]

1) Whether the City's laws and policies regarding non-discrimination regulate conduct and not speech because the City's regulation affects what subsidy recipients must do, not what they may or may not say? *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 60 (2006).

   a. Even if the regulation of conduct effects the Cradle of Liberty Council's speech, whether the Cradle of Liberty Council's first amendment claim fails because:

      i. the City has the constitutional authority to enact non-discrimination laws, *Bd. Of Dirs. Of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987);

      ii. non-discrimination policies further the important or substantial government interest in eradicating discrimination, *Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio*, 902 F. Supp. 492, 521 (D.N.J. 1995) ("New Jersey has described its interest in eliminating discrimination on the basis of . . . sexual orientation . . . as being of 'preeminent social significance.' . . . New Jersey's interest is not only substantial but also can be characterized as compelling");

      iii. the City's regulations are wholly unrelated to suppressing free expression, *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 572 (1995) (the Massachusetts Public Accommodations law "[did] not, on its face, target speech or discriminate on the basis of its content, the focal point of its prohibition being rather on the act of discriminating against individuals"); and

      iv. any encroachment to speech is incidental? *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 67 (2006).

2) Whether the City's provision of subsidized use of City-owned property for the purpose of benefiting the community at large by providing recreational and similar opportunities and ensuring that City-owned properties are restored, preserved and maintained at minimal cost to the City, and explicitly not to encourage a diversity of views, constitute a nonpublic forum? *Locke v. Davey,* 540 U.S. 712, 720 (2004).

---

[3] "The Pennsylvania Constitution provides essentially the same protection of expression as does the United States Constitution." *Pap's A.M. v. City of Erie*, 674 A.2d 338, 345 (Pa. Commw. Ct. 1996). The legal analysis of the Boy Scouts' free speech claims asserted under Article I, § 7 of the Pennsylvania Constitution is therefore the same as set forth in the questions addressing the Boy Scouts' claims under the United States Constitution.

3) Whether the City is speaking through the provision of subsidized use of City-owned property and has the right to control its message of non-discrimination? *ACLU of Tenn. v. Bredesen*, 441 F.3d 370, 375 (6th Cir. 2006).

4) Whether the City has broad discretion to make selective subsidy decisions? *Rust v. Sullivan*, 500 U.S. 173, 193 (1991).

   a. Whether the City is seeking to terminate the subsidy because the Cradle of Liberty Council refused to comply with the City's non-discrimination laws and policies, and not because of an exercise of protected speech or association? *Boy Scouts of Am. v. Wyman*, 335 F.3d 80, 88 (2d Cir. 2003); *Evans v. City of Berkeley,* 129 P.3d 394, 401 (Cal. 2006);

   b. Whether the City is selectively terminating its subsidies to suppress dangerous ideas? *Evans v. City of Berkeley,* 129 P.3d 394, 402 (Cal. 2006).

5) Whether the City's termination of its subsidy because of the Cradle of Liberty Council's refusal to agree to comply with City laws and policies in connection with the Cradle of Liberty Council's use of the city property is viewpoint neutral? *Boy Scouts of Am. v. Wyman,* 335 F.3d 80, 87 (2d Cir. 2003).

   a. Whether the City's termination of its subsidy to the Cradle of Liberty Council, which refuses to agree to comply with the City's non-discrimination laws and policies, is a reasonable means to further the City's interest in eliminating such discrimination? *Boy Scouts of Am. v. Wyman*, 335 F.3d 80, 98 (2d Cir. 2003); *Evans v. City of Berkeley,* 129 P.3d 394, 406 (Cal. 2006).

   b. Whether the City's termination of its subsidy to the Cradle of Liberty Council because of the Cradle of Liberty Council's refusal to comply with City laws and policies that apply to all subsidy recipients is viewpoint neutral?

6) Whether the City may condition receipt of its subsidy on compliance with the City's reasonable and viewpoint neutral non-discrimination laws? *Boy Scouts of Am. v. Wyman,* 335 F.3d 80, 91 (2d Cir. 2003); *Evans v. City of Berkeley,* 129 P.3d 394, 402 (Cal. 2006).

VI. **STIPULATIONS OF COUNSEL AND LIST OF ADMISSIONS**

The parties have agreed to bifurcate the liability and the damages phases of this trial. The parties have agreed that Cradle of Liberty Council is not seeking money damages other than attorney's fees if it prevails.

**VII.   PROPOSED POINTS FOR CHARGE**

The City's proposed points for charge are attached as Appendix C. The City reserves the right to file supplemental points upon the close of testimony.

Respectfully,

/s/ David Smith
David Smith (Attorney I.D.  21480)
Stephenie Yeung (Attorney I.D. 84415)
Rebecca Lacher (Attorney I.D. 203938)

*Attorneys for Defendant,
 City of Philadelphia*

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania  19103-7286
(215) 751-2000

Of Counsel

Dated:  June 4, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2010, I caused a true and correct copy of City of Philadelphia's Pretrial Memorandum, and attached appendices, to be served by electronic service on:

>Jason P. Gosselin, Esquire
>William M. McSwain, Esquire
>Daniel B. Scott, Esquire
>Richard M. Haggerty, Jr., Esquire
>Tara S. Sarosiek, Esquire
>Robyn S. Stoter, Esquire
>Drinker Biddle & Reath LLP
>One Logan Square
>18th and Cherry Streets
>Philadelphia, PA 19103

>_/s/ Rebecca Lacher_
>Rebecca Lacher (I.D. 203938)
>Attorney for City of Philadelphia
>City of Philadelphia